## In re FRAZIN & OPPENHEIM.

(District Court, S. D. New York. November 18, 1909.)

### No. 11,997.

**1. LANDLORD AND TENANT (§ 76*)—LEASE—COVENANT NOT TO ASSIGN—VIOLATION.**

A lessee's covenant not to assign, mortgage, or pledge the lease, or underlet the property, without the lessor's consent, is not violated by the lessee's bankruptcy.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 228; Dec. Dig. § 76.*]

**2. LANDLORD AND TENANT (§ 103*)—LEASE—COVENANTS—BREACH—INSOLVENCY.**

A covenant that in case of the lessee's insolvency, or the institution of bankruptcy proceedings by or against him, or the appointment of a receiver or trustee of the lessee's property, or the devolution upon any person by operation of law of the lessee's occupancy, shall authorize the lessor to re-enter, is violated by the occurrence of any of the acts specified.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 103.*]

**3. LANDLORD AND TENANT (§ 112*)—LEASE—BREACH OF COVENANT—WAIVER.**

Acceptance of rent by a landlord, after a breach of covenant authorizing re-entry, waives the right forever.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 345; Dec. Dig. § 112.*]

**4. BANKRUPTCY (§ 152*)—EFFECT—TITLE TO PROPERTY—RELATION.**

Bankruptcy divests the owner of property of the title, which thereupon becomes in custodia legis, and on the appointment of a trustee his title relates back to the date of the adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 194; Dec. Dig. § 152.*]

**5. BANKRUPTCY (§ 139*)—ASSETS—LEASE.**

On the bankruptcy of a tenant, his trustee, on his appointment, was vested with title to the lease, subject to acceptance within a reasonable time, if his acceptance would be advantageous to the estate; and hence the lessor, having accepted rent from the trustee, waived all provisions authorizing re-entry in case of the bankruptcy of the lessor, authorizing the trustee to sell the lease and convey title to the purchaser, without being subject to re-entry on the part of the landlord, so long as the purchaser complied with the provisions of the lease.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 218; Dec. Dig. § 139.*]

In the matter of Frazin & Oppenheim, bankrupts. Petition by trustee for a sale of a lease and the property on the leased premises previously occupied by the bankrupt as a going concern, and to determine asserted adverse claims by the United Cigar Stores Company, the lessor. From an order of the referee sustaining the landlord's claim in part, the trustee files a petition for review. Modified.

Stroock & Stroock, for United Cigar Stores Co.

Guthrie B. Plante, for trustee.

HOLT, District Judge. This is a petition to review an order of the referee, made in a proceeding instituted by petition of the trustee

for authority to sell a lease. On April 2, 1907, the United Cigar Stores Company made a lease, demising to the bankrupts, Frazin & Oppenheim, certain premises at 258 West 125th street, New York, for a term expiring April 1, 1913, at an annual rent of $10,000. The lease, among other provisions, contained the following:

"Not to assign, mortgage, or pledge this lease, nor underlet the whole or any part of the premises, without the lessor's written consent. If the lessee shall at any time during the term hereby demised become insolvent, or if proceedings in bankruptcy shall be instituted by or against said lessee, * * * or if a receiver or trustee shall be appointed of the lessee's property, or if this lease shall, by operation of law, devolve upon or pass to any person or persons other than said lessee, then and in each of said cases it shall and may be lawful for the lessor, at the lessor's election, into and upon said demised premises or property or any part thereof, in the name of the whole, to enter," etc.

The bankrupts, upon the execution of the lease, went into occupation of the premises, occupied them as a shoe store, and paid rent regularly therefor until their bankruptcy. On February 3, 1909, a petition in bankruptcy was filed against them, and receivers were appointed. The receivers were authorized, by the order appointing them and subsequent orders, to continue the business. They continued in possession of the store, continuing the business there, until August, 1909. While in possession, the landlord sent to the receivers monthly bills for the rent, which the receivers paid. In August, a trustee was elected and qualified, who went into possession of the premises and continued the business there. The landlord sent the trustee bills for rent for August and September, and the trustee paid the bills. The trustee, on September 27, 1909, filed a petition, praying for an order authorizing the sale of the lease and the property situated in the premises as a going concern. It is alleged in the petition that the landlord asserted claims adverse to the interest of the trustee herein, and threatened to re-enter upon the premises, and the trustee asked for authority to sell, and that the landlord be compelled to set up its interest in the leasehold, or be thereafter debarred from asserting any interest. A hearing was had before the referee, on which the landlord appeared and asserted that, under the covenants of the lease, it had the right to re-enter the premises, and would have such right in case of their sale by the trustee. The referee, by his decision, held, in substance, that the acceptance of rent by the landlord from the trustee, under the provisions of the lease, was a waiver of the right to re-enter as to all grounds of re-entry which had occurred before the acceptance of the rent, but that as, at the time the proceeding was begun, the trustee had not exercised any election to accept the lease as a part of the bankrupts' estate, nothing had then occurred to bring into operation the clause in the lease authorizing a re-entry if the lease should "by operation of law devolve upon or pass to any person or persons other than said lessee," but that, whenever the trustee should accept such lease, or should sell it, and it should pass to a purchaser, the landlord would have the right thereupon to re-enter the premises for a violation of said provision in the lease, and an order to that effect was entered. The question involved in this proceeding is whether that order should be affirmed.

There can be no doubt, under the authorities, that a covenant by the lessee, in a lease, not to assign, mortgage, or pledge the lease, or underlet, without the lessor's consent, is not violated by the lessee's bankruptcy. Gazlay v. Williams, 147 Fed. 678, 77 C. C. A. 662, 14 L. R. A. (N. S.) 1199; affirmed 210 U. S. 41, 28 Sup. Ct. 687, 52 L. Ed. 950; Re Pennewell, 119 Fed. 139, 55 C. C. A. 571. The covenant, however, providing that, in the case of the lessee's insolvency, or the institution of bankruptcy proceedings by or against him, or the appointment of a receiver or trustee of the lessee's property, or the devolution upon any person, by operation of law, of the lessee's occupancy, the lessor may re-enter, is violated by the occurrence of any of the acts specified. The rule is well stated in Jones on Landlord and Tenant, § 466, cited with approval in Gazlay v. Williams, 210 U. S. 41, 28 Sup. Ct. 687, 52 L. Ed. 950, where it is said that an ordinary covenant against subletting and assigning is not broken by a transfer of the leased premises by operation of law, but the covenant may be so drawn as to expressly prohibit such a transfer, and in that case the lease would be forfeited by an assignment in operation of law. It is equally well settled that the acceptance of rent by a landlord, after a breach of a covenant in a lease authorizing re-entry, waives the right of re-entry, and the right thus waived is dispensed with forever. Re Montello Brick Works (D. C.) 163 Fed. 624; Murray v. Harway, 56 N. Y. 357; Conger v. Duryee, 90 N. Y. 594. The acceptance of rent by the landlord, therefore, after the adjudication and the appointment of a receiver, waived the right to re-enter because of such adjudication or appointment. The question whether the landlord has still a right of re-entry under the clause giving such right if the lease should, by operation of law, devolve upon any person other than the lessee, depends on the question whether such devolution took place before the acceptance of rent. The referee holds that, as the evidence did not establish that the trustee had affirmatively assumed the lease before the last rent was paid, no devolution had taken place at that time; but he held that, if the trustee should hereafter assume or sell the lease, such devolution would take place, and the landlord could re-enter and deprive any purchaser of the property. Of course, if this view is correct, nobody will buy the lease from the trustee.

I think that the correct view in this matter is that the condition of a bankrupt's property, after the adjudication and before the appointment of a trustee, is analogous to the condition of the personal property of a decedent before the appointment of an executor or administrator. Bankruptcy, like death, divests the owner of the title. It becomes thereupon in custodia legis. Keegan v. King (D. C.) 3 Am. Bankr. Rep. 79, 96 Fed. 758. Upon the appointment of a trustee, he takes title by relation back as of the date of the adjudication. The earlier English cases held that until the assignee of the bankrupt assumed a lease the title remained in the bankrupt (Copeland v. Stephens, 1 B. & Ald. 593); and there are earlier decisions in this country to the same effect (Lowell on Bankruptcy, § 372, and cases cited). The question has usually arisen in the case of suits for rent against assignees in bankruptcy, and the decision, although often put on the

ground that the title is not in the assignee until he has elected to assume the lease, might properly have been put on the ground that an assignee, by exercising his right to reject the lease within a reasonable time, frees himself from the obligation to pay rent. Judge Lowell says of the case of Copeland v. Stephens:

"It has had two unfortunate consequences. It has left the bankrupt liable to debts and obligations without the means of satisfying them, and has obscured the true principle of the vesting of all the bankrupt's property in the assignees, and has induced bankrupts and their creditors to suppose that whatever was not claimed by the assignees belonged to the bankrupt. Late statutes in England have so changed the law as to vest onerous property in the assignees, subject to their right of disclaimer, and to relieve the bankrupt whether they disclaim or not. This puts the doctrine on a just and intelligible basis." Lowell on Bankruptcy, § 372.

I think that under the present bankrupt act, in this country as well as in England, a trustee, upon his appointment, takes title, as of the date of the adjudication, to all the assets of the bankrupt, good or bad. He has a right to reject any assets which are worthless or burdensome. In the case of a leasehold, it is always a question whether a lease has any value. If the rental is higher than the regular market rate of rentals for such property, it has no value; if it is lower, it has a value; but, in my opinion, the title to the lease does not remain in the air until the trustee affirmatively takes action to assume the lease. The true view, in my opinion, is that the trustee, upon his appointment, is vested with the lease, subject to the right to decline to accept it, within a reasonable time, if his acceptance of it will not be advantageous to the estate. If this view is correct, the landlord, in this case, by accepting rent from the trustee, waived all the provisions in the lease authorizing re-entry, and the result is, in my opinion, that the trustee can sell this lease and give a perfect title to it, and the purchaser can take the premises for the term of the lease, not subject to re-entry so long as the purchaser complies with the provisions of the lease.

My conclusion is, therefore, that the referee's order should be modified to conform to this opinion. The order should be settled on notice.