In re GUTMAN.

NELSON et al. v. DENMARK.

(District Court, S. D. Georgia, E. D.   July 17, 1912.)

1. LANDLORD AND TENANT (§ 108*)—BREACH OF LEASE—RENT—DELAY IN PAYMENT.

Though a lease stipulated for payment of rentals on the 1st of each month, it had been the unbroken custom of the tenant to pay and for the landlord to receive payment on the 10th following. The tenant having been declared a bankrupt on May 28, 1912, the trustee was appointed on June 10th, and five days thereafter he tendered the May rentals, which were refused. *Held*, that such delay did not authorize a forfeiture of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 333–335; Dec. Dig. § 108.*]

2. LANDLORD AND TENANT (§ 104*)—LEASE—ASSIGNMENT—BANKRUPTCY PROCEEDINGS.

Where a lease to a bankrupt for five years, though containing a covenant against assignment and subletting, did not expressly prohibit such transfer nor provide for termination on the transfer of the lessee's interest by bankruptcy proceedings, such a transfer to the lessee's trustee in bankruptcy was an act of the law and did not terminate the lease, especially under Civ. Code Ga. 1895, § 3115, inferentially providing that a lease for five years confers a legal estate on the lessee.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 328; Dec. Dig. § 104.*]

3. BANKRUPTCY (§ 262*)—LEASE—TRANSFER—SALE BY TRUSTEE.

Where a leasehold is claimed by a bankrupt's trustee as a part of his estate, it is the duty of the trustee either to fix an upset price for a sale of the leasehold sufficient to pay the lessor the entire rentals for the remaining term of the lease and pay over such amount to the lessor, or require a bond with ample security, obliging the purchaser to conform

*For other cases see same topic & § NUMBER in Dec. & Am. Digs: 1907 to date, & Rep'r Indexes.

strictly to all the terms of the lease, and, if bids cannot be obtained subject to these conditions, to surrender the lease to the landlord.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 363–365; Dec. Dig. § 262.*]

In Bankruptcy. In the Matter of Jacob E. Gutman, bankrupt. On petition to review a referee's order denying the claim of Right Reverend Cleland K. Nelson, Episcopal Bishop of the Diocese of Atlanta, as trustee of the fund for the support of Episcopal missions of the said diocese, and the Protestant Episcopal Church in the Diocese of Georgia, a corporation, as trustee of the fund for the support of the indigent widows and orphans of deceased clergymen of the diocese of Georgia, to forfeit a lease to the bankrupt. Affirmed.

Lawton & Cunningham and Edward S. Elliott, all of Savannah, for petitioners.

Remer L. Denmark and Garrard & Gazan, all of Savannah, for bankrupt.

SPEER, District Judge. In this case the title to a storehouse in La Roche Tything, Heathcote ward, in Savannah, was in the Right Reverend Cleland K. Nelson, Episcopal bishop of the diocese of Atlanta, as trustee of the fund for the support of Episcopal missions of the said diocese, and also in the Protestant Episcopal Church in the diocese of Georgia, a corporation, as trustee of the fund for the support of the indigent widows and orphans of deceased clergymen of that diocese. The tenant bears to English ears the ominous name of "Jacob E. Gutman," which perhaps in the kindly German imports "Gootman"; that is, "Goodman." However this may be, Gutman becomes bankrupt, and the prelates who have intrusted their valuable holding in La Roche Tything to him discover that their lease is claimed by the trustee Remer L. Denmark of the Savannah bar as one of Gutman's assets. The referee is of the trustee's opinion. He orders the leasehold rights of Gutman to be sold. This is done over the strenuous objection of the clergy, who declare the proceeding illegal. Their contention is entitled to great consideration for as early as the day of William of Malmesbury in the eleventh century it is announced by that worthy, "Nullus clericus nisi causidicus." In addition to this, the clerical is fortified by the opinions and argument of orthodox counsel.

It is contended for the church: First. That by its express terms the lease was not assignable, and therefore the trustee who takes the property of the bankrupt cum onere cannot take the lease for the effect of such taking would be an assignment, and for the same reason that he cannot sell it. It is argued that the holding of Gutman is merely a usufruct, and that he has no estate in the land whatever. Second. That after bankruptcy there was a default in the payment of monthly rentals, and this because of an express provision of the lease worked an immediate forfeiture.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] Upon the last ground it will suffice to say that Gutman was adjudicated a bankrupt on the 28th day of May, 1912. The trustee was appointed on the 10th day of June. Within five days he tendered the May rentals, which were not due until the 1st day of June, and these were declined. Besides, it was conceded that, while the lease stipulated that the rentals should be paid on the 1st of the month, it was the unbroken custom of Gutman to pay, and the church authorities to receive payment, on the 10th of the month. The failure to pay for five days it is true would have worked a forfeiture, but the trustee accepted the lease and offered to pay the rentals due within four days after the 10th. Now the bankruptcy law does not hold the trustee to the precise and rigid performance of a stipulation, even though time is of the essence of a contract. Like the administrator of a deceased person's estate, and the bankrupt is civilitum mortuus, the trustee is given a reasonable time within which to make payment, or perform a duty. This is made clear by many cases. In re Rubel (D. C.) 166 Fed. 131; In re Frazin & Oppenheim (D. C.) 174 Fed. 713; In re Roth & Appel, 181 Fed. 670, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270; In re Frazin & Oppenheim, 183 Fed. 28, 105 C. C. A. 320, 33 L. R. A. (N. S.) 745; Dushane v. Beall, 161 U. S. 513, 16 Sup. Ct. 637, 40 L. Ed. 791; U. S. Trust Co. v. Wabash Ry., 150 U. S. 289 (1) (2), 14 Sup. Ct. 86, 37 L. Ed. 1085. Since equity abhors a forfeiture, and the bankruptcy court is a court of equity, we are very sure that an offer to pay the rentals due within five days after the usual and customary date of payment should avoid the forfeiture of all the creditors' rights if they in fact existed in the leasehold interest of the bankrupt.

[2] Whether such rights do exist is a question of greater gravity. It is contended by Mr. Elliott with much earnestness and ability for the lessors here that, since Gutman could not himself have assigned his lease, the law imparts to the trustee no such right. Unhappily, however, for this contention, the precise question seems to have been determined adversely to it by the Supreme Court of the United States. This was in the case of Gazlay v. Williams, Trustee, 210 U. S. 41, 28 Sup. Ct. 687, 52 L. Ed. 950. In that case the lease contained this stipulation:

"Provided, however, that if said lessee shall assign this lease or underlet said premises, or any part thereof, or if said lessee's interest therein shall be sold under execution or other legal process, without the written consent of said lessors, their heirs or assigns, is first had, or if said lessee or assigns shall fail to keep any of the other covenants of this lease by said lessee to be kept, it shall be lawful for said lessors, their heirs or assigns, into said premises to re-enter and the same to have again, repossess, and enjoy as in their first and former estate, and thereupon this lease and everything therein contained on the said lessor's behalf to be done and performed, shall cease, determine, and be utterly void."

This stipulation is even more stringent than that in the lease before the court, and there Chief Justice Fuller, for the unanimous court, reannounces the law as it had been previously stated in Jones on Landlord & Tenant, that an ordinary covenant against subletting and

assignment is not broken by a transfer of the leased premises by operation of law, "but the covenant may be so drawn as to expressly prohibit such a transfer, and in that case the lease would be forfeited by an assignment by operation of law." A clause in the syllabus of that case clearly condenses the ruling. It is:

"The passage of a lease from the bankrupt to the trustee is by operation of law and not by the act of the bankrupt nor by sale, and a sale by the trustee of the bankrupt's interest is not forbidden by, nor is it a breach of a covenant for, re-entry in case of assignment by the lessee or sale of his interest under execution or other legal process, where, as in this case, there is no covenant against transfer by operation of law."

The chief element of wealth in Georgia is in lands, and our legislation and jurisprudence are not unfavorable to the landlord. This, indeed, has been recently made plain by a decision in this court (In re Burns [D. C.] 175 Fed. 633) subsequently affirmed by the Supreme Court (Henderson, Trustee, v. Mayer, 225 U. S. 631, 32 Sup. Ct. 699, 56 L. Ed. ——). There a superior lien was accorded the landlord against the assets of the bankrupt.

The precise question now before the court now seems controlled by section 3115 of the Code of Georgia of 1895. This provides:

"When the owner of real estate grants to another simply the right to possess and enjoy the use of such real estate, either for a fixed time or at the will of the grantor, and the tenant accepts the grant, the relation of landlord and tenant exists between them. In such case no estate passes out of the landlord, and the tenant has only a usufruct, which he cannot convey except by the landlord's consent, and which is not subject to levy and sale."

Then follows this significant clause:

"And all renting or leasing of such real estate for a period of time less than five years shall be held to convey only the right to possess and enjoy such real estate, and to pass no estate out of the landlord, and to give only the usufruct, unless the contrary be agreed upon by parties to the contract, and so stated therein."

Now the restriction of this language to a lease of less than five years is of the utmost significance here. It clearly imports in our judgment no change as to the general law with regard to a lease for five years or more. "Expressio unius est exclusio alterius." Such general law, as we have seen, has been announced by the Supreme Court in Gazlay v. Williams, supra. It is a reannouncement of the common law. It is supported by reference to the doctrine of Dumpor's Case, 4 Rep. 119; s. c., 1 Smith's Leading Cases, 85; by Doe v. Bevan, 3 M. & S. 353. In the last case so renowned a judge as Lord Ellenborough sat as chief justice, and with him Judges Le Blanc, Danforth, and Bayley. In a concurring opinion the last said:

"It has never been considered that the lessee's becoming bankrupt was an avoiding of the lease within this proviso; and, if it be not, what act has the lessee done to avoid it? All that has followed upon his bankruptcy is not by his act, but by the operation of law transferring his property to his assignees. [For "assignee" read "trustee."] Then shall the assignees have capacity to take it, and yet not to dispose of it. Shall they take it only for their own benefit, or be obliged to retain it in their hands to the prejudice of the creditors, for whose benefit the law originally cast it upon them? Undoubtedly that can never be."

It follows that since the limitations placed upon the common law by the statute of Georgia upon which the landlord here must rely does not extend to a lease of five years and beyond, and since this is a lease for five years, we must hold that its transfer from the bankrupt to the trustee by operation of the bankruptcy law does not avoid the lease, and, since it is of value, it may be sold for the benefit of creditors.

While this is true, as in another case, we hold it is the duty of the court to see to it that the sale is made upon terms that will make sure the payment of all the rentals due and to become due to the landlord. Equity we think demands that this lease should be made to bring an upset price which will make sure the payment of these rentals for the eleemosynary purposes to which they are to be appropriated. Non constat that the purchaser of the lease will make these payments when they become due. The court while doing equity to the creditors must secure equity to the landlord.

[3] We think it our duty, therefore, to send this case back to the referee, and direct that this lease be resold at an upset price sufficient to pay to the authorities of the church the entire rentals for the term of the lease, and that the trustee should pay over such rentals for the entire term of the lease as soon as he receives them. On failure to sell the lease for a sum sufficient to pay down all the rentals due for the term of the lease, order should be taken to restore at once the property in its integrity to the owners, and, besides, to pay the rentals already accumulated, and other proper charges under the lease. The same equitable result may be secured if the referee, in his judgment, should accept a bond, with ample security to be approved by him, obliging the purchaser at the sale to conform strictly to all the terms of the lease.

Let order be taken accordingly.