---

### In re BENZ.

(District Court, W. D. Pennsylvania. December, 1913.)

1. LANDLORD AND TENANT ☞112—ASSIGNMENT WITHOUT LESSOR'S CONSENT—WAIVER.

Under a lease containing a covenant by the lessee that he would not assign the lease without the lessors' consent in writing, and a provision, that upon the lessee's failure to keep and perform any of the covenants and agreements therein contained the lessors should have the right to cancel and annul the lease, where, though the lessors' agent refused to consent to an assignment of the lease until all taxes had been paid in full agreeing however, that such consent would be given when the taxes had been paid, the assignment was made with his knowledge and the assignee placed in possession, the lessors availed themselves, through their agent, of the money and notes which the assignee paid to procure the assignment, and used such money and notes in discharge of the lessee's liabilities to them, received rent from the assignee, which they receipted for as received from "K. [the lessee], per B. [the assignee]," and must have known that the lessee was no longer interested in the retail liquor business carried on by the assignee, in view of a law requiring the applicant for a license to be the only person interested in the business, the lessors

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lost their right to cancel and annul the lease, and could not claim that their tenant was the lessee, and not the assignee.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 343–349; Dec. Dig. 112.]

2. LANDLORD AND TENANT 104—COVENANTS AGAINST ASSIGNMENTS—BANK-RUPTCY.

A covenant in a lease that the lessee would not assign the lease without the lessors' consent in writing applied only to an assignment by the act of the parties, and not to an assignment by act of law, and did not affect the title of a lessee's receiver in bankruptcy.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 328; Dec. Dig. 104.]

In Bankruptcy. In the matter of Landelin J. Benz, bankrupt. On petition by the receiver for an order for the sale of property free from liens. Petition granted.

George C. Burgwin and Hill Burgwin, both of Pittsburgh, Pa., for appellant.

J. R. D. Huston, of Pittsburgh, Pa., for bankrupt.

ORR, District Judge. The receiver in bankruptcy has presented his petition, setting up that he had offered for sale the Commercial Hotel, the personal property therein, and the leases therefor at public sale according to the provisions of law; that at the time when the same were offered for sale it was announced by an attorney for the pledgee of the leases that said pledgee would not recognize any purchaser at such sale as being the owner of the unexpired term of the leases, unless such purchaser paid to the attorney for the pledgee the sum of $8,600, and it was announced at the same time that the landlords would not permit such purchaser to occupy and use the premises, unless such purchaser first paid the landlords the sum of approximately $12,000, this amount being claimed by the landlords to be due for taxes and water rents due the city of Pittsburgh; and that by reason of said announcements the petitioner received no bids for the property offered for sale.

The petitioner prayed for a rule upon the landlords and upon the pledgee of the leases to show cause why this court should not authorize and direct the receiver to take the unexpired balance of the term of the leases as an asset of the estate and sell the same, together with the personal property, furniture, stock of liquors, and fixtures on the premises, and also including the sole right to apply for transfer of the liquor licenses, and praying the court to enjoin the pledgee of the leases from interfering with the possession of such purchaser in the unexpired terms of the leases, and to enjoin the landlord from interfering with the possession of said purchaser in the unexpired term of said leases, and to order and decree that the property be sold free and clear of any trust or lien, without prejudice, however, to the parties interested to assert whatever liens, priorities, or equities they may have in the property against the fund arising from the proceeds of the sale.

To said petition answers were filed by the pledgee and by the landlords. The facts are practically agreed upon, as appears by a stipulation signed by counsel for both the petitioner and respondents. The

answer of the landlords to the petition is made by George C. Burgwin, their agent, and the answer of the pledgee bank is made by George C. Burgwin, its president. The material facts appear to be as follows:

[1] On or about April 1, 1906, the landlords, as the owners of property in the city of Pittsburgh known as the Commercial Hotel, leased the same to one Kramer for a period of 10 years from April 1, 1906, with covenants in the lease for payment of rent at the office of Mr. Burgwin, or at such other place as the landlords should thereafter designate, and for the payment of water rents, taxes, assessments, and municipal claims to be assessed against the premises, the same to be paid by the lessee. The lease contained this covenant on the part of the lessee:

"Fourth. That he will not assign this lease without the consent in writing of the said lessor."

There is a further provision in the lease that upon a failure to make the payments therein provided, or to perform any of the covenants therein contained, the rights of the lessee should cease, and the lessor may thereupon enter an action of ejectment against the lessee, etc.

On February 9, 1912, said Kramer entered into an agreement with the bankrupt to sell to the latter all his rights in the premises, including his stock in trade, fixtures, good will, leasehold, etc., for and in consideration of the sum of $40,000, payable as follows: $15,000 in cash, $15,000 in real estate, and $10,000 in promissory notes. The said last-mentioned sum consisted of three promissory notes, one in the sum of $3,000, payable November 1, 1912; the second, $4,000, payable May 1, 1913; and the balance, $3,000, payable November 1, 1913—all of said notes to bear interest from May 1, 1912.

At the time said agreement was entered into there was due in unpaid taxes assessed against the premises over $20,000, some of which was for years antedating the date of the lease, and since that time other taxes have become due. Kramer applied to Mr. Burgwin for permission to assign the lease to Benz. The owners through him refused to consent to the assignment of the leases until all of the taxes had been paid in full, but agreed that, whenever all the taxes assessed against said premises had been paid in full, if Kramer should again apply to the lessors, permission to assign would be given. No written or verbal consent to any assignment to Benz by Kramer has ever been given by the lessors in pursuance of the agreement between Kramer and Benz. Kramer on or about May 1, 1912, made a written assignment of the said leases and put Benz in possession of the premises. This was known to Mr. Burgwin. The cash mentioned in the agreement was paid by Benz to Kramer. The real estate was transferred and Benz executed and delivered the promissory notes above mentioned to Kramer. Possession of the premises was taken by Benz with full knowledge that no written or verbal consent to the assignment of said leases had ever been given by the landlords. Because of the fact that Benz was unable to provide satisfactory indorsers for said notes, Benz agreed that the leases assigned to him by Kramer should be held by Mr. Burgwin to secure the payment of said notes.

The $15,000 in money and the promissory notes were delivered to Kramer in the presence of George C. Burgwin and by him delivered to the latter. Since May 1, 1912, Benz has been in possession of the premises, known as the Commercial Hotel, and has conducted therein a hotel business, and on that date obtained a license from the Court of Quarter Sessions of Allegheny county to sell liquor on the premises for one year succeeding that date, and on May 1, 1913, he obtained a license in said court to sell liquor on the premises from that date for one year succeeding the same, and this with the knowledge of Mr. Burgwin. Since Benz has been the occupant of the premises he has made monthly payments of rent to the landlords, receipts for the same being given in the following form:

"Pittsburgh, Pa.          1912.

"Received from A. E. Kramer, per L. J. Benz, seven hundred and fifty and 00/100 dollars on account of rent for premises, 121–123–125 Sixth street, to          1912, as per leases.

"George C. Burgwin,
"Attorney for Wm. Arrowsmith,
"Ex'r of P. McCrea, Dec'd."

The money received by Kramer from Benz in pursuance of the agreement was payable by or under the direction of Mr. Burgwin in discharge of taxes accruing against the premises so far as the same would reach. The notes of Benz with the leases attached were placed with the Marine National Bank, the pledgee, as collateral security for the payment of a note made by Kramer and discounted by the bank. Since the delivery of said notes to said bank Benz has paid thereon to the bank the sum of $2,100, leaving a balance due on account of the principal of the notes the sum of $7,900; interest, of course, being added. Under the terms of the agreement between Kramer and Benz, Kramer agreed to pay all the taxes assessed against the premises prior to January 1, 1912, and to pay one-third of the taxes assessed against the premises for 1912; Benz agreeing to pay the remaining two-thirds of the taxes for 1912, and all subsequent taxes assessed during his occupancy. The law of Pennsylvania relating to licenses to sell liquor at retail provides that an applicant shall set forth in his petition:

"Seventh. That the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person shall be in any manner interested therein during the continuance of the license."

[2] We notice first in the lease that there is no provision for the termination of the lease by an assignment other than an assignment by the act of the parties. In other words, an assignment by act of law does not affect the title of the receiver in bankruptcy. No further authority is necessary for this than Gazlay v. Williams, 210 U. S. 41, 28 Sup. Ct. 687, 52 L. Ed. 950, 20 Am. Bankr. Rep. 18. So that, if Benz is lawfully in possession of the premises under a lease from the owners, the rights of Benz are vested by operation of the bankruptcy law in his receiver. We have, however, to consider whether or not under all the facts, as outlined in this case, the landlords can now assert that Benz was not their tenant at the institution of the bankruptcy proceedings on November 12, 1913.

After careful consideration of the matter we are constrained to hold, with respect to the provision in the lease against an assignment by the tenant, under all the circumstances as outlined hereinabove, that the landlords have waived the provision in the lease and cannot now assert that their tenant is Kramer and not Benz. There is no doubt that the landlords received their rent from Benz. Although the receipt may indicate that they were looking to Kramer, with knowledge of the law of Pennsylvania they must have realized that Kramer was no longer interested in the business carried on by Benz under his license. They knew it from the character of the agreement entered into between Kramer and Benz, which was brought to the attention of their agent. They availed themselves, through their agent, of the money and the notes which Benz paid and delivered to Kramer to procure the assignment, and the landlords used the money and the notes which they knew had come from Benz in discharge of the liabilities. To consider the matter in any other light would be to permit the landlord to enjoy the fruits of Kramer's assignment to Benz, the fruits of Benz's occupancy of the premises, and yet hold over Benz's head the club that unless he made good the balance that Kramer may have owed he would not be recognized as the tenant. The equities are against the landlords, and this court cannot permit them to declare a forfeiture of the lease which Benz paid for with a consideration and rent which the landlords have received and applied to Kramer's indebtedness.

In Re Frazin & Oppenheim (D. C., N. Y.) 23 Am. Bankr. Rep. 289, 174 Fed. 713–715, Judge Holt says:

"It is equally well settled that the acceptance of rent by a landlord, after a breach of a covenant in a lease authorizing re-entry, waives the right of re-entry, and the right thus waived is dispensed with forever."

See, also, In re Montello Brick Works (D. C., Pa.) 20 Am. Bankr. Rep. 855, 163 Fed. 624, 629. Other cases could be cited, including cases from Pennsylvania, which may be found in Jackson & Gross on Landlord and Tenant in Pennsylvania, page 215 et seq.

The language of the lease does not provide that assignment without consent ipso facto works a forfeiture, but it provides in general terms that, upon a failure—

"to keep and perform any of the covenants and agreements herein contained, the lessor shall have the right at any time to cancel and annul this lease."

The lessors should have exercised that right before they accepted from the assignee of the license any rent, or applied the consideration which the assignee had paid to the lessee to the discharge of the liabilities. It is too late for them to claim their right to cancel and annul the lease.

We are therefore of opinion that the prayers of the petition should be granted, and an order will be made to that end when presented.